IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TIMOTHY M. BIAS,

    Plaintiff,

v.                                                    Case No.: 3:09-cv-01094

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

    Defendant.

## MEMORANDUM OPINION

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Claimant's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently before the Court on the parties' cross motions for judgment on the pleadings as articulated in their briefs. (Docket Nos. 12, 13 and 14). Both parties have consented in writing to a decision by the United States Magistrate Judge. (Docket Nos. 8 and 9).

The Court has fully considered the evidence and the arguments of counsel. For the reasons set forth below, the Court finds that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

### I.   Procedural History

Plaintiff, Timothy Bias (hereinafter "Claimant"), filed applications for DIB and SSI on August 18, 2006, alleging that he had been disabled since July 24, 2006 due to

musculoskeletal pain in his lower back and both legs. (Tr. at 12, 29, 157-159). The Social Security Administration (hereinafter "SSA") denied the claims initially and upon reconsideration. (Tr. at 12). Thereafter, Claimant requested an administrative hearing, which was conducted on July 15, 2008 by the Honorable William H. Gitlow, Administrative Law Judge (hereinafter "ALJ"). (Tr. at 20-59). By decision dated March 2, 2009, the ALJ determined that Claimant was disabled beginning on October 25, 2007 and, therefore, was entitled to benefits as of that date. (Tr. at 12-19). The ALJ's decision became the final decision of the Commissioner on August 17, 2009 when the Appeals Council denied Claimant's request for review. (Tr. at 1-3). Claimant filed the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. §405(g). (Docket No. 2). The Commissioner filed an Answer and a Transcript of the Administrative Proceedings, and both parties filed their Briefs in Support of Judgment on the Pleadings. (Docket Nos. 10, 11, 13 and 14). Consequently, the matter is ripe for resolution.

## II. <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A).

The Social Security Regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§

404.1520, 416.920. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to prove, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined as a preliminary matter that Claimant met the insured status requirements of the Social Security Act through December 31, 2010. (Tr. at 14, Finding No. 1). At the first step of the sequential evaluation, the ALJ found that Claimant had not engaged in substantial gainful activity since October 25, 2007. The ALJ explained that he disregarded Claimant's assertion that he last worked on July 24, 2006. After obtaining copies of Claimant's income tax returns and considering the totality of the evidence, the ALJ concluded that, contrary to Claimant's testimony, he had engaged in substantial gainful activity through October 25, 2007. (Tr. at 14-15, Finding Nos. 2 and 3). Turning to the second step of the evaluation, the ALJ determined that Claimant had the severe impairment of degenerative disc disease of the lumbar spine. (Tr. at 16, Finding No. 4). However, under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter the "Listings"). (Tr. at 16, Finding No. 5). The ALJ assessed Claimant's residual functional capacity (hereinafter "RFC") as the following:

> [b]eginning on October 27, 2007, the claimant has had the residual functional capacity to lift and/or carry 5 pounds maximum; occasionally sitting, standing or walking; occasionally reaching, climbing or squatting; and never bending, kneeling, crawling or performing overhead reaching.

(Tr. at 16-18, Finding No. 6).

As a result, the ALJ found that Claimant could not return to his past relevant employment as a carpenter and carpet layer, defined as heavy, skilled work. (Tr. at 18, Finding No. 7). The ALJ considered that (1) Claimant was 38 years old on the established disability onset date, defined as a younger individual aged 18-49 years old; (2) he had a limited education, but could communicate in English; and (3) he had no

work skills that were transferable to occupations within his RFC.  (Tr. at 18, Finding Nos. 8, 9, and 10). Using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids") as a framework, and considering Claimant's additional limitations, the ALJ concluded that Claimant became disabled on October 25, 2007 and remained so through the date of the decision. (Tr. at 19, Finding No. 12).

### III.   Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence.  In *Blalock v. Richardson,* the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). This Court is not charged with conducting a *de novo* review of the evidence.  Instead, the Court's function is to scrutinize the totality of the record and determine whether substantial evidence exists to support the conclusion of the Commissioner. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).  The decision for the Court to make is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart,* 434 F. 3d 650,653 (4th Cir. 2005), citing *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 2001).  If substantial evidence exists, then the Court must affirm the decision of the Commissioner "even should the court disagree with such decision."   *Blalock v. Richardson, supra* at 775.

A careful review of the record reveals that the decision of the Commissioner is based upon an accurate application of the law and is supported by substantial evidence.

## IV.     Claimant's Background

Claimant was thirty-eight years old at the time of his administrative hearing. (Tr. at 24). He completed the ninth grade in school and never obtained a GED.  (Tr. 27). Claimant's prior work experience included carpentry and flooring work. (Tr. 28). Claimant's primary language was English.

## V.      Claimant's Challenges to the Commissioner's Decision

Claimant's sole challenge to the decision of the Commissioner concerns the ALJ's determination of Claimant's disability onset date to be October 25, 2007, rather than the alleged date of July 24, 2006. Claimant contends that the ALJ made the erroneous finding by drawing incorrect inferences from his own observations and from Claimant's income tax returns and medical records.  According to Claimant, the ALJ mistakenly concluded that Claimant had continued working as a carpet layer after the alleged disability onset date and until October 2007, when, in truth, all of the family earnings during that time frame had been generated by his wife.  (Pl. Br. at 6-10).  In response, the Commissioner argues that Claimant's income tax returns reflect substantial gainful activity during the relevant time period, and Claimant failed to successfully demonstrate that he was not the individual who earned this income.  (Def. Br. at 7-10).

## VI.     Relevant Evidence

The ALJ relied upon several pieces of evidence to support his finding that Claimant's disability onset date was October 25, 2007 rather than July 24, 2006.  First, he noted that Claimant's medical records reflected an absence of treatment between December 2005 and November 2006 and also between December 2006 and October 25,

- 6 -

2007. Then, on October 25, 2007, Claimant presented to the office of his treating physician complaining that he had "reinjured" his back while working in the flooring industry. (Tr. at 14). It was not until this visit that Claimant began to receive "steady treatment." *(Id.)*. Consistent with his complaints at the time, Claimant's MRI study taken in December 2007 demonstrated that Claimant had nerve root displacement caused by a ruptured disc at the L5/S1. *(Id.)*. Claimant's prior back film, a CT scan taken in December 2005, showed only "some bulging discs at L3-S1 but nothing showing nerve root contact, let alone displacement." *(Id.)*.

Second, the FICA earnings for Claimant and his wife for the years 2006 and 2007 substantiated annual income of $16,990 and $12,043, respectively. *(Id.)*. Accordingly, the ALJ requested Claimant's income tax returns to determine who actually earned the income reported. Upon receiving the request, Claimant immediately petitioned his tax preparer at H&R Block to make amendments to his 2006 and 2007 income tax returns, replacing him with his wife as the self-employed individual who earned the greater part of the annual income. Only the amended returns were provided to the ALJ. As such, he felt the timing of the amendments and Claimant's hesitance to provide the original filings were suspicious. The ALJ commented that "[c]ounsel and the claimant chose not to provide me copies of the original filings, so I can not see what it was that the claimant signed and sent to the IRS in April 2007 and April 2008." (Tr. at 15).

Finally, the ALJ doubted Claimant's credibility on the issue of his date of disability, noting that Claimant "would have me believe that after July 2006 it was his wife who did the work for the Bias Brothers (the name of [Claimant's] company)—and did the very heavy (and skilled) carpet installing that the claimant had done previously." *(Id.)*. The ALJ rejected this contention because he saw "no basis to find the spouse had

the prior experience and the physical capability of stepping in and handling such work." *(Id.).* Moreover, the ALJ observed that Claimant had notable calluses on his hands at the time of the administrative hearing, which were consistent with recent, sustained labor rather than labor that had ceased two years earlier. *(Id.).*

## VII. Analysis

The Court has considered each of the ALJ's stated reasons for his finding of the disability onset date and will address them in turn. At the outset, however, the Court notes that Claimant has the burden of proving that he is under a disability as defined by the Social Security Act. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). If, in retrospect, an inability to engage in substantial gainful activity did not last 12 months, then the SSA "will automatically assume that the claimant failed to meet the duration requirement. It will not look back to decide hypothetically whether, despite claimant's actual return to work before 12 months expired, the 'inability' nonetheless *might have been* expected to last that long." *Barnhart v. Walton,* 535 U.S. 212, 215 (2002). The Social Security Rulings and regulations are clear; "if you are engaging in substantial gainful activity (SGA) you are not eligible for payment of disability benefits." SSR 05-02.[1] "[A] Claimant is not disabled if 'regardless of [his] medical condition,' he is doing 'substantial gainful activity.'" *Barnhart v. Walton, supra*

---

[1] One exception to this general rule is the concept of unsuccessful work attempt ("UWA"). The SSA will not consider work determined to be an UWA as substantial gainful activity. That concept is inapplicable in this case, however, because Claimant contends that he did not engage in any work activities after July 24, 2006. Accordingly, the ALJ was precluded from considering whether subsequent work activities undertaken by Claimant met the definition of UWA. *See* SSR 05-02.

at 217, citing 20 C.F.R. § 404.1520(b). Consequently, in this case, the onset date of Claimant's severe impairment is not particularly relevant; instead, the last date upon which Claimant engaged in substantial gainful activity ("SGA") will determine his disability onset date.

Claimant does not argue that the ALJ misapplied the process in his analysis of Claimant's applications for benefits. Instead, he alleges that the conclusions reached by the ALJ were factually incorrect and, consequently, lacked substantial evidentiary support. The Court's review of the ALJ's decision is limited to determining whether sufficient evidence exists in the record to support the ALJ's findings. As noted above, sufficient evidence means "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972), quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The Court will not undertake to substitute its judgment for that of the Commissioner. *Craig v. Chater,* 76 F.3d 585 (4th Cir. 2001). "The denial of benefits [for the period of July 2006 through October 2007] will be reversed ***only if no reasonable mind could accept the record as adequate to support the determination.***" *Washington v. Commissioner of Social Security,* 2009 WL 86737 at *10 (E.D.Va.), citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (emphasis added).

### A.    Lack of Medical Evidence

In his decision, the ALJ points to Claimant's lack of medical treatment between December 2005 and November 2006, and then between December 2006 and October 2007 as evidence that Claimant engaged in SGA, and, thus, was not under a disability during that time frame. (Tr. at 14). Claimant argues that he did not receive treatment during these periods, because he did not have health coverage and could not afford

medical care. (Pl. Br. at 8). The medical evidence includes the following relevant information.

On December 12, 2005, Claimant underwent a CT scan of the lumbar spine, which revealed "a small central bulging disc at the L3-L4 level as well as posterior bulging disc at L4-L5 and diffusely bulging disc at L5-S1. Bulging disc L5-S1 is somewhat asymmetric to the left. No fractures are seen." (Tr. at 243). In follow-up to this medical imaging, Claimant consulted with Dr. Robert Lowe, a local orthopedist. (Tr. at 239-241). Dr. Lowe saw Claimant on December 15, 2005 and recommended that he undergo physical therapy to lessen his pain. At Claimant's request, Dr. Lowe gave Claimant a return-to-work slip, indicating "that he could work but lifting will have to be done with caution." (Tr. at 241).

The records in evidence are void of any entries reflecting medical treatment or evaluation between December 15, 2005 and October 11, 2006. Nonetheless, Claimant testified that he last worked on July 24, 2006. According to Claimant, on that date, he "ruptured" his back while laying flooring at an elementary school in Wayne; thereby rendering him physically incapable of working. (Tr. at 29). He went to the hospital and was sent to a physician in Kentucky, who recommended surgery. (Tr. at 30). When Claimant was not interested in surgery, the physician told Claimant to consult with his family physician and take ibuprofen for pain. (*Id.*)

On October 11, 2006, Claimant was evaluated by Dr. W. Roy Stauffer at the request of the SSA (Tr. at 248-249). Dr. Stauffer found Claimant to have chronic low back pain with a history of bulging discs and degenerative disc disease, and osteoarthritis of both knees. He opined that Claimant was in significant pain, which was legitimate and not exaggerated. (*Id.*). Dr. Stauffer did not comment on whether or not

Claimant was working at that time.

On November 2, 2006, Claimant presented to the Emergency Department at Cabell Huntington Hospital for "acute exacerbation of chronic back pain." (Tr. at 273-277). Claimant told the registration clerk and the primary nurse that he was "not employed." (Tr. at 273, 275). Two days later, Claimant went to the Emergency Department at St. Mary's Medical Center complaining of back pain. (Tr. at 260-262). He reported that he had experienced low back pain "on and off" for one year, but the pain had become worse "in the past 1 week." He denied any new injury. (Tr. at 261). He advised the registration clerk that he was off of work on medical disability. (Tr. at 260).

On November 16, 2006, Claimant consulted with Dr. Buddy Hurt, a family physician. (Tr. at 313-315). Claimant reported that he had a herniated disc that "recently had a flare." He indicated that he was "employed in flooring and unable to work at this time." (Tr. at 313). Dr. Hurt noted in his record that Claimant had no health insurance and, therefore, could not pursue physical therapy. (Tr. at 314). Dr. Hurt recommended that Claimant obtain a medical card and undergo a complete work-up. (*Id.*). Three weeks later, on December 6, 2006, Claimant returned to Dr. Hurt's office. Claimant indicated that he was expecting a medical card that week. (Tr. at 312). Dr. Hurt provided Claimant with some pain medication and planned to schedule him for a neurosurgery evaluation and physical therapy upon receipt of the medical card. (*Id.*).

After that visit, Claimant did not see any health care provider until October 25, 2007. On that date, he presented to Dr. Hurt's office complaining of back pain. (Tr. at 311). Claimant reported that he had "attempted to return to the flooring industry and [had] reinjured his back." (*Id.*). Dr. Hurt scheduled Claimant for an MRI of the lumbar spine, which indicated that "central disc herniations are noted at the L2/3 and L3/4

levels with mild central bulging disc at L4/5.  There is also a small right posterolateral disc herniation at L5/S1 causing nerve root displacement."  (Tr. at 272).  After this medical imaging, Claimant began to receive regular medical care for his musculoskeletal impairments.

From reviewing these records, the Court finds that the ALJ's conclusion that Claimant engaged in SGA between July 2006 and October 25, 2007 is supported by substantial evidence.  While it is likely that Claimant only worked intermittently and ceased working upon the onset of acute exacerbations of back pain, the records imply that Claimant did not have a continuous period during which he was off-work until October 2007.  A reasonable construction of the medical records supports a presumption that Claimant worked between July 25, 2006 and November 2, 2006; took time off in November and December 2006 to rest his back during acute attacks; and returned to work from late December 2006 through October 25, 2007, at which time he reinjured his back and could no longer tolerate the physical demands of flooring.  Certainly, Claimant's use of phrases such as "flare up," "on and off" and "reinjury" imply an intermittent, rather than constant disability.

### B.     Income Tax Returns

Obviously, Claimant's wage information triggered the lion's share of the ALJ's questions.  The parties do not dispute that Claimant and his wife reported income of $16,990 in 2006 and $12,043 in 2007.  Likewise, the parties do not dispute that this income, if earned by Claimant, would constitute substantial gainful employment.  The question is who actually earned the income reported.  The original income tax returns identified Claimant as the wage earner for the bulk of the income in both years.  (Tr. at 15).  Those returns were amended after the ALJ requested them, but before he received

them, and then indicated that Claimant's wife was the primary wage earner. (Tr. at 138). According to the tax preparer at H&R Block, the amendments were made entirely upon the representations of Claimant that his wife was the actual earner and the original returns were erroneous. (Tr. at 138). The documentation which accompanied the amended returns reflected that the majority of the income received by Claimant and his wife in 2006 and 2007 was derived from "Bias Brothers" flooring business. (Tr. at 141 and 148). The amended Schedule C-EZ forms identify Claimant's wife as the individual who earned the income from the flooring business. (*Id.*). Notably, Claimant did not produce any underlying documentation from Bias Brothers to verify the information contained on the amended Schedule C-EZ forms, although that information would surely be within his control. He did produce a letter from Cornerstone Interiors, Inc., which confirmed that Claimant worked for that business from October 2005 through February 24, 2006. (Tr. at 137). Claimant contends that this letter establishes that Cornerstone was the "last employer [he] worked for under the union." (Pl. Br. at 6).

The ALJ was understandably suspicious of Claimant's representations regarding his work activity in 2006 and 2007. As the ALJ explained, he did not believe that Claimant's wife was capable of providing the heavy, skilled labor needed to lay flooring. (Tr. at 15). Claimant never supplied an alternate explanation of the services provided by his wife, which accounted for the wages paid to her by Bias Brothers. Moreover, the timing of the tax return amendments requested by Claimant raised additional doubt. As the ALJ emphasized, Claimant and his wife sought assistance from a tax preparer to file their income tax returns. Logically, the tax preparer would have completed the returns based upon the information provided by Claimant and his wife. The ALJ was naturally skeptical that the tax preparer could have made such a blatant error and that Claimant

and his wife would have overlooked it. In addition, Claimant's reticence in producing the original returns only served to corroborate the ALJ's reservations. Finally, the letter from Cornerstone proved nothing. That correspondence seemingly validated Claimant's final work date as February 24, 2006; however, Claimant's testimony contradicted such a conclusion. At the administrative hearing, Claimant stated that he hurt his back on July 24, 2006, while laying flooring at an elementary school in Wayne. Inasmuch as he admitted to working after the time frames included in the Cornerstone letter, that piece of evidence was rendered irrelevant.

Claimant argues that the ALJ failed to fully develop the record in regard to his employment history and income. The Court does not find this argument persuasive. The ALJ wrote to Claimant's counsel and requested documentation to clarify this issue. (Tr. at 136). Likewise at the administrative hearing, the ALJ expressly communicated his concern with the inconsistencies between Claimant's statements and the income records. (Tr. at 51). In response to the ALJ's inquiries, Claimant provided information that only served to persuade the ALJ that Claimant had engaged in SGA until October 2007. Claimant had the burden of proving that he did not work; therefore, when he realized the nature of the ALJ's questions, Claimant had the obligation to bring to the ALJ's attention everything that substantiated Claimant's disability, including any records that would establish a sustained negative effect on his ability to engage in substantial gainful activity. 20 C.F.R. §§ 404.1512(a), 416.912(a). Furthermore, while the ALJ had the duty to fully and fairly develop the record, he was not required to act as Claimant's counsel. *Clark v. Shalala,* 28 F.3d 828 (8th Cir. 1994). The ALJ had the right to assume that Claimant's counsel was presenting Claimant's strongest case for benefits. *Nichols v. Astrue,* 2009 WL 2512417 *4 (7th Cir. 2009), citing *Glenn v. Sec'y of Health*

*and Human Servs.,* 814 F.2d 387,391 (7th Cir. 1987). The ALJ requested additional information and received it. Accordingly, he fulfilled his duty to develop the record. The Court finds that the determination reached by the ALJ that the 2006 and 2007 income reflected in the Schedule C-EZ forms was generated by Claimant, not his wife, is supported by substantial evidence.

### C. ALJ's Observations

Claimant takes issue with the ALJ's statement that he observed Claimant's hands during the hearing, and they contained "quite notable calluses under the third, fourth and fifth fingers of the right hand." (Tr. at 15). The ALJ added, "[s]uch calluses reflect significant, sustained, recent labor—not labor ended two years prior." (*Id.*). Claimant argues that with these observations, the ALJ provided a medical opinion that he was not qualified to render. (Pl. Br. at 8). In response, the Commissioner asserts that the ALJ reached his determination of Claimant's disability onset date by considering the totality of the evidence, not on one isolated observation. The Court agrees with the Commissioner. The ALJ's determination was unquestionably multifactorial in foundation and was sufficiently supported by his review of the medical evidence and income records. In any event, the ALJ is not expected to abandon his common sense when adjudicating these matters. To the contrary, because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989-990 (4th Cir. 1984), citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976). In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, make determinations as to credibility, or substitute its own judgment for that of the Commissioner." See *Hays v. Sullivan,* 907 F.2d. 1453,

1456 (4th Cir. 1990).   Having reviewed the entire record in this case and having thoroughly considered the ALJ's decision and the arguments of the parties, the Court finds that the ALJ's determination of Claimant's disability onset date was supported by substantial evidence.

## VIII.  Conclusion

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Therefore, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of record.

**ENTERED:**  February 9, 2011.

_____
Cheryl A. Eifert
United States Magistrate Judge